```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/5/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
UNITED STATES,                                                    :
:
:
:
          -v-                                                     :   96-cr-323 (LJL)
:
RITA GLUZMAN,                                                     :   ORDER
:
                              Defendant.                          :
:
------------------------------------------------------------------ X

LEWIS J. LIMAN, United States District Judge:

The Government has moved for reconsideration of the Court's July 23, 2020 Order, Dkt. No. 117, granting compassionate release to Rita Gluzman pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the following reasons, the Government's request is denied.

## BACKGROUND

In 1997, Gluzman was convicted of murdering her husband, Yakov Gluzman ("Yakov"), in additional to unlawful interception of wire communications and unlawful use of a wire to intercept oral communications. The facts leading to Gluzman's arrest and conviction are discussed in detail in the Court's previous opinion. Dkt. No. 117 at 1-5. On June 2, 2020, Gluzman filed a motion for compassionate release. Dkt. No. 107. She argued that her case satisfied the "extraordinary and compelling" standard required for compassionate release on three grounds: (1) her serious medical condition; (2) her age, deteriorating physical and mental health and time already served; and (3) other facts and circumstances including COVID-19 and Gluzman's good moral character and exemplary conduct while incarcerated. Dkt. No. 117 at 15.

On July 23, 2020, the Court granted Gluzman's motion for compassionate release. Dkt.

No. 117.  The Court observed that Gluzman suffered from numerous severe medical conditions, both physical and mental, and that the BOP was not in a position to treat Gluzman's Parkinson's disease simultaneously with her depression.  *Id*. at 28.  The Court found that Gluzman was unable to care for herself within the prison environment and that her conditions would "require frequent monitoring, evaluation and treatment." *Id*. at 29 (quoting *United States v. McGraw*, 2019 WL 2059488, at *4 (S.D. Ind. May 9, 2019).  The Court also found that Gluzman's age weighed in favor of her release; she was 71 years old, had served 24 years in prison, and was "experiencing a serious deterioration in physical or mental health because of the aging process" as required by the compassionate release statute.  *Id*. at 30 (quoting Application Note 1 to U.S.S.G. § 1B1.13).  The Court also considered two additional bases put forth by Gluzman, namely her risk of serious or fatal medical consequences should she contract the COVID-19 virus and her exemplary conduct while imprisoned, "to be unique and powerful arguments for a sentence reduction." *Id*. at 33.

As for danger to the community, the Court concluded that "the circumstances of Ms. Gluzman's crime imply that she was motivated by context-specific factors that no longer exist." *Id*. at 36.  There was no evidence that Gluzman had ever shown violence to another person, and several individuals, including Gluzman's psychologist, a psychiatrist, and a reverend who had known her since 2006, submitted letters to the court stating that Gluzman is not a danger to the community. *Id*.  The Court concluded that Gluzman was not likely to recidivate.

Finally, as required by statute, the Court considered the factors set forth in 18 U.S.C. § 3553(a).  The Court acknowledged that Gluzman's crime was "abhorrent."  *Id*. at 38.  However, the Court observed that the sentence of 24 years she had already served "reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense." *Id*. at

39. Gluzman's medical conditions further supported early release, as well as the fact that her sister had promised to make sure that Gluzman would receive the care she needed if released. *Id*. Additionally, the Court noted that Gluzman likely would have received a lesser sentence had she been convicted in state court rather than in federal court, a circumstance which a court may consider under 18 U.S.C. § 3553(a)(6).

On August 5, 2020, the Government moved for reconsideration of the Court's order. Dkt. No. 147.

## LEGAL STANDARD

The Local Rules of this District permit a party to file a motion for reconsideration, "setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Rule of Criminal Procedure 49.1(d). "[A] court should grant a motion for reconsideration 'only if the moving party can point to controlling decisions or data that the court overlooked' and 'might reasonably be expected to alter the conclusion reached by the court.'" *United States v. Fnu Lnu*, 2015 WL 13307424, at *1 (S.D.N.Y. Nov. 13, 2015) (quoting *United States v. Smith*, 2012 WL 1700465, at *3 (S.D.N.Y. May 15, 2012)). The movant must "point to matters . . . that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478)). A motion for reconsideration cannot "be used as a vehicle to introduce new evidence 'that should have been set forth during the pendency of the prior motion or could have been discovered in the exercise of due diligence.'" *United States*

3

*v. Gross*, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) (quoting *Brown v. J.F.H. Mak Trucking*, 1999 WL 1057274, at *1 (E.D.N.Y. Nov. 8, 1999)).

Section 3582(c) of Title 18 permits a court to modify a term of imprisonment when it finds that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c). The applicable policy statements are found at U.S.S.G. § 1B1.13. They state, in relevant part, that a reduction of the term of imprisonment may be appropriate where: (1) extraordinary and compelling reasons warrant the reduction; (2) the defendant is not a danger to the safety of any other person or to the community; and (3) the reduction is consistent with this policy statement. *Id.* Application Note 1 to U.S.S.G. § 1B1.13 further elaborates that extraordinary and compelling reasons can arise for the following reasons:

> (A) Medical Condition of the Defendant.—
> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Application Note 1, U.S.S.G. § 1B1.13.

4

Section 3142(g) sets forth the relevant factors for determining whether a defendant remains a danger to the community:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Finally, 18 U.S.C. § 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before granting a sentence reduction. These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

18 U.S.C. § 3553(a).

## DISCUSSION

The Government raises six factual and legal issues it claims the Court overlooked in its compassionate release order. First, it argues that Gluzman's murder of Yakov was not, as the Court characterized it, "context-specific," but the culmination of a premediated, financially

motivated scheme.  Second, it argues that the Court erroneously overlooked Gluzman's lack of remorse.  Third, it argues that, contrary to the Court's findings, the BOP did not present Gluzman with the choice of treating either her Parkinson's disease or her depression.  Fourth, the Government argues that the Court erroneously determined that Gluzman is incapable of caring for herself.  Fifth, it argues that the Court inappropriately considered what sentence Gluzman might have served had she been prosecuted in the state courts.  Sixth and finally, it argues that the Court overlooked the discretion Judge Parker had in deciding to sentence Gluzman to life in prison.

Much of what the Government raises in its motion for reconsideration it has either argued before, or could have argued.  The Government's motion will be denied for that reason alone.  It will also be denied on the merits.  The Court already considered and rejected most of the Government's arguments.  To the extent there is anything new in the Government's motion, it would not have led to a different decision even if it had been argued earlier.

### A.  "Context-Specific" Crime of Passion

The Government argues that the Court erred in characterizing Gluzman's crime as a "context-specific" crime of passion.  Dkt. No. 147 at 26-37.  The Government mischaracterizes the Court's opinion.  Nowhere in its opinion does the Court refer to Gluzman's crime as a "crime of passion."  As the Government observes in a footnote, the Court was clear that Gluzman "planned the murder in advance" and that Gluzman tried to kill Yakov on at least one previous occasion before the actual murder.  Dkt. No. 147 at 26 n.21.  The Government argues that the Court "implied" that the murder was a spur of the moment decision when it stated that Gluzman "endeavored to kill her husband expeditiously with the tools she had available and then dispose of the body."  *Id*. at 27 n. 21.  The Court never suggested that, nor did it base its opinion upon, a

6

supposition that Gluzman committed the crime on the spur of the moment or in a heat of passion. The Court gave ample weight to the horrific nature of the crime and the undisputed fact that the murder was premeditated, nor did it blame the victim for what occurred.  The Court merely noted that the crime occurred within the context of a particular relationship, a fact which supported Gluzman's argument that she was not likely to recidivate, a factor relevant to the statutory considerations with respect to compassionate release.

As for the question whether Gluzman was a victim of domestic violence, the Government asks the Court to revisit the findings of fact in made in its earlier decision.  In reciting the facts of the case, the Court stated: "Ms. Gluzman's husband subjected her to domestic violence, including choking.  At times, he threw her to the floor and drove his knee into her back until she suffered substantial pain."  For those propositions, the Court cited Gluzman's medical records. Dkt. No. 107-2, Exh. 33.  The relevant language is on page 129, in a letter from her clinical psychologist:  "As therapy progressed, Ms. Gluzman ultimately revealed a history of being the victim of domestic violence at the hands of her husband, including episodes of being choked and of being thrown to the floor followed by having her husband drive his knee into her back until she suffered substantial pain."  In short, the Court's statement was fully supported by the record before it.  The Government now says that the evidence submitted by defendant was "false" and faults the Court for relying on it.  Dkt. No. 147 at 24.  Its primary basis is that "[t]here was no evidence at trial that Yakov was abusive." Dkt. No. 147 at 30.  But the fact that a defendant does not adduce a fact at trial, when that fact might not be relevant or the defendant chooses simply not to mention it does not mean that it did not happen.  In any event, the Government had the opportunity to challenge this assertion in its opposition to the motion and it choose not to do so. It is too late to raise it now.  It is also irrelevant. Even if it were the case that Gluzman was not

7

the victim of domestic violence, that fact would not change the Court's ultimate conclusion that compassionate release is warranted in this case.

### B. Gluzman's Lack of Remorse

The Government next argues that the Court failed to consider Gluzman's lack of remorse for killing Yakov. Dkt. No. 147 at 37. According to the Government, "[l]ack of remorse is a legitimate factor under § 3553(a)." *Id*. (quoting *United States v. Brodsky,* 675 F. App'x 59, 62 (2d Cir. 2017)). The Court considered this argument in its original opinion, observing that the Government had "devote[d] an entire section of its brief to the argument that Ms. Gluzman has 'expressed no remorse for her crimes.'" Dkt. No. 117 at 39 n.9 (quoting Dkt. No. 113 at 16). The Court rejected the Government's argument on the ground that it "relie[d] on the arguments Ms. Gluzman's *lawyer* made in his motion." *Id*. Further, as Gluzman observes in her brief in opposition to the motion for consideration, "[t]here is substantial evidence in the record demonstrating Ms. Gluzman's remorse, including two letters from Ms. Gluzman and a number of letters submitted in support Ms. Gluzman [sic] from those who knew her best." Dkt. No. 148 at 12 (quotation omitted). The Government raises nothing in its motion for reconsideration that the Court did not duly address in its first opinion. The Court will not reevaluate evidence it already considered in its previous opinion.

### C. Gluzman's Medical Treatment at the BOP

The Government next contests Gluzman's claim that the BOP presented her with the choice between having her Parkinson's disease or her depression treated. *Id*. at 41. The Government claims there is no evidence, aside from Gluzman's assertions and those of doctors who relied on her representations, that the BOP ever presented her with this choice. *Id*. The Government challenges the report of Dr. Orr, Gluzman's witness, which indicated that

"Psychiatry has specifically stated in their note that she can either treat her Parkinson's disease or she can treat her depression." *Id*. at 42.  According to the Government, the BOP cannot find this note, and it does not appear in Gluzman's medical records.  The Government speculates that Dr. Orr's report was based only upon what Gluzman herself reported.  *Id*.  The Government bolsters this claim by alleging that Gluzman does not suffer from depression; instead, according to the declaration of Dr. Meisamy, who has served as the Chief Psychiatrist of FMC Carswell since January 2020, Gluzman suffers from post-traumatic stress disorder.  *Id*. at 43.  Finally, the Government argues that BOP medical staff were adequately treating both of Gluzman's medical conditions.

      The Government fails to point out law or facts that the Court did not treat in its opinion, instead asking the Court to reevaluate how it weighed the record the first time around.  The Court considered the evidence that both parties put before it and concluded that the BOP could not adequately treat Gluzman's various medical conditions.  Further, the Government never raised this argument before its motion to reconsider, nor did it raise the argument at any earlier point that Gluzman does not suffer from depression.  In support of its new arguments, the Government puts forward the declaration of Dr. Meisamy.  The introduction of this new evidence is not appropriate, as a motion to reconsider cannot be "used as a vehicle to introduce new evidence that should have been set forth during the pendency of the prior motion or could have been discovered in the exercise of due diligence."  *Gross*, 2002 WL 32096592, at *4 (E.D.N.Y. Dec. 5, 2002) (quoting *Brown*, 1999 WL 1057274, at *1).  Additionally, as the defense observes, "the Government fails to offer any basis to conclude that these allegedly overlooked facts would have changed the Court's determination."  Dkt. No. 148 at 14.

9

### D. Gluzman's Inability to Care for Herself

Next, the Government argues that the Court erred in finding that Gluzman's "capacity to sustain her own health has been significantly compromised" and that she had endured a "substantial diminution in ability to provide self-care based on the medical evidence." *Id*. at 48. The Government points to the BOP's conclusion that Gluzman was "able to perform [her] activities of daily living." Dkt. No. 147 at 48. The Government also points to a letter Gluzman sent to the Court asking it to lift the terms of Gluzman's home confinement, so that she could socialize outside the home and go shopping for food and clothing. *Id*. at 49. The Government argues that this request shows that Gluzman's "ability to provide self-care was not, in fact diminished." *Id*. at 50.

Once again, the Government raises arguments that the Court considered in its initial opinion. The Government relies upon the BOP's determination that Gluzman did not suffer from a "debilitated medical condition" within the meaning of Section 3(b) of BOP Policy Statement 5050.50, which the BOP uses in determining whether to grant requests for compassionate release administratively. As the Court observed in its decision, under the First Step Act, a federal court is not required to accept the BOP's evaluation of a prisoner's medical condition and may make its own independent determination as to whether a prisoner can provide self-care within the correctional facility. Dkt. No. 117 at 29-30. The Court independently determined that Gluzman's ability to care for herself within a correctional facility was "substantially diminished" by her medical condition. Dkt. No. 117 at 29. The Government has not established she has an ability to care for herself even outside the correctional facility environment. But even if it had, that would not undermine the Court's finding about her ability to function within the correctional environment.

### E. Possible State Court Sentence

Fifth, the Government argues that the Court improperly considered what Gluzman's sentence would have been had she been tried in a state court. In its opinion, the Court recited "that in New York State, persons convicted of intentional murder have been paroled, on average, after serving about 26 years." Dkt. No. 117 at 40. The Court relied upon *United States v. Johnson*, 505 F.3d 120 (2d Cir. 2007) for the proposition that a court may "consider federal/state sentencing disparities when analyzing 18 U.S.C. § 3553(a)(6)." *Id*. at 123 n.4.

The Government argues that *Johnson* does not stand for the proposition that a court may consider the disparity between state and federal sentencing. Dkt. No. 147 at 50. Instead, the Government points out, the Second Circuit expressly reserved the question. *Id*. at 51 ("[T]he footnote in *Johnson* that the Court cites instead explicitly states that the Second Circuit 'do[es] not reach that question here.'") (quoting *Johnson*, 505 F.3d at 123 n.4)). The Government also points to *United States v. Williams*, 524 F.3d 209 (2d Cir. 2008), because instead of looking at the Sentencing Guidelines as "'the starting point and the initial benchmark' in determining an appropriate sentence," *id.* at 215 (citing *Gall v. United States*, 522 U.S. 38, 49 (2007)), the Court eschewed the Guidelines "at the threshold, because of a 'personal policy.'" *Id.* at 215. This Court committed no such mistake. It accepted the Sentencing Guidelines calculation as determined by Judge Parker, but then—as required by statute—applied the Section 3553(a) factors and determined that Ms. Gluzman's compassionate release was consistent with those factors. Among the factors that was relevant to that analysis was a factor the *Williams* court expressly indicated was permissible to consider—"the uniform sentencing scheme prescribed by the New York State Legislature." *Id.* at 215.

The Government also faults the Court for relying upon a study by the New York State

11

Department of Correctional and Community Supervision ("DOCCS"), which concluded that in New York State, persons convicted of murder are released on parole after serving, on average, 26 years. Dkt. No. 147 at 53-54. The Government argues that the DOCCS study is not representative for a number of reasons, including the fact that it only discussed inmates who were ultimately released and it included many defendants who accepted responsibility for their crimes. *Id*. at 54. Further, the Government takes issue with the Court's conclusion that "[h]ad Mr. Gluzman happened to move to an apartment in New Jersey, and had Ms. Gluzman committed the exact same acts, it is highly likely that her sentence would have been shorter." Dkt. No. 147 at 56. The Government points out that the DOCCS study treated New York defendants, not New Jersey defendants, and as such, would not have applied to the situation postulated in the Court's hypothetical. Further, it points to New Jersey's criminal statutes, which require that a defendant convicted of murder must serve at least 30 years in prison without the possibility of parole. Dkt. No. 147 at 56 (citing N.J. Rev. Stat. § 2C:11-3(b)(1)).

As an independent basis for denying reconsideration, Gluzman argued in her original motion for compassionate release that her sentence would have been shorter had she been charged in state court and relied on the DOCCS study. The Government had ample time to address Gluzman's arguments. To the extent that it renews arguments it already made, those arguments were rejected and will not be reconsidered. To the extent that the Government attempts to offer new evidence, that evidence could have been presented earlier and is not properly before the Court.

The Government mistakes the Court's reliance on the disparity between state and federal sentences. The Court did not hold that it could *depart* from the Sentencing Guidelines based on a disparity between state and federal sentences. It held that the sentence that Gluzman could

have received in state court was a relevant factor in the Court's exercise of discretion under Section 3553(a). Indeed, the Second Circuit has held that "the plain language of § 3553(a)(6) does not on its face restrict the kinds of disparity a court may consider." *United States v. Wills*, 476 F.3d 103, 109 (2d Cir. 2007).

Finally, to the extent that the Government argues the Court erred in stating that, had Yakov moved to a new residence in New Jersey instead of New York, Gluzman would likely have received a lighter sentence, the specifics of that hypothetical were immaterial to the Court's decision. The Court's point was that it could not say that release—given all of Gluzman's health conditions, the Covid-19 circumstances, and the evidence of her rehabilitation—was not consistent with Section 3553(a) based on the gravity of the crime when other penal authorities considering the gravity of similar crimes would not have considered release after 24 years in prison to be unduly lenient.

### F. Judge Parker's Discretion

Finally, the Government argues that the Court overlooked the discretion Judge Parker had in deciding to sentence Gluzman to life imprisonment. Dkt. No. 117 at 57. The Court concluded in its opinion that:

> The sentencing court was not obligated, as district courts now are, to "make an individualized assessment based on the facts presented and impose a sentence 'sufficient, but not greater than necessary' to satisfy the purposes of criminal sentencing." *Gall v. United States*, 552 U.S. 38, 50 (2007); 18 U.S.C. § 3553(a). Nor is there any reason to believe that the sentence then imposed reflected a determination by the court that a life sentence was required to vindicate the purposes of the criminal law.

*Id*. at 40. The Government argues that Gluzman would likely receive the same sentence today that she received then. Dkt. No. 147 at 58-59. The Government also points out that Gluzman presented Judge Parker with three arguments in favor of departing from the Sentencing

13

Guidelines in favor of a lesser sentence, but that Judge Parker rejected all three of them. Dkt. No. 147 at 59-60.

The Court did not overlook Judge Parker's discretion in rendering its decision. It discussed his reasoning in the opinion. And as Defendant observes, the critical issue in a compassionate release case is the defendant's position at the present time, not at the time of sentencing. Dkt. No. 148 at 26. While the Court must reconsider the Section 3553(a) factors in considering whether a compassionate release is warranted, the mere fact that a sentence was imposed under those factors cannot preclude compassionate release in and of itself. Were it the case that the Court could never impose a sentence lighter than that imposed by the sentencing judge, no one could ever be released on compassionate release. Congress's statute would be illusory.

The Court's point about Judge Parker was that he was sentencing Gluzman under the sentencing regime that existed before the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220 (2005). That decision held that the Guidelines are not binding. Sentencing courts are now required by law to look independently at the sentencing factors in Section 3553(a) and to impose a sentence "sufficient, but not greater than necessary," to serve the statutory purposes of sentencing. Judge Parker did not engage in that analysis, because he was not required to. This Court is required to engage in that analysis by the First Step Act, which requires a court to look at Section 3553 after determining that the defendant otherwise qualifies for compassionate release. 18 U.S.C. § 3582(c)(2). It did so and concluded both that Gluzman qualified for compassionate release and that release would be consistent with the purposes of federal sentencing.

## CONCLUSION

The Government's motion for reconsideration is denied.

SO ORDERED.

Dated: November 5, 2020
      New York, New York

                                                    LEWIS J. LIMAN
                                         United States District Judge